OPINION
{¶ 1} Kevin Eikenberry pled no contest to seventeen counts of having weapons while under disability after the Montgomery County Court of Common Pleas overruled his motion to *Page 2 
suppress evidence seized pursuant to a warrant and his motion to dismiss the indictment. The court sentenced him to five years of community control sanctions. On appeal, Eikenberry claims that the trial court erred in overruling his motions. For the following reasons, the judgment will be affirmed.
 {¶ 2} The record reveals the following facts. On October 24, 2005, Kevin Eikenberry was indicted with possession of cocaine in State v.Eikenberry, Montgomery Case No. 2005-CR-3544. On February 2, 2006, the trial court granted Eikenberry's request for intervention in lieu of conviction ("ILC") in that case.
 {¶ 3} One week later, New Lebanon police officers obtained a search warrant to search Eikenberry's residence and business at 619 W. Main Street in New Lebanon, including any safe located inside the building. The search warrant was based on the affidavit of Sergeant David Adkins, which included various averments that Eikenberry had been in possession of crack cocaine on several occasions during the prior six months. The affidavit further stated that a confidential informant had advised the officer on February 1, 2006 that Eikenberry smoked crack daily and that he had guns locked in a safe inside his residence. On February 3, 2006, a confidential informant also told Adkins and a Trotwood detective that Eikenberry had purchased $200 of crack cocaine within the past seventy-two hours and that Eikenberry had discussed having the informant store guns for him. Officers had also observed two large gun-type safes on the lower level of the building within the past several months. Eikenberry's residence was searched on February 10, 2006, resulting in the seizure of eighteen guns and numerous other items.
 {¶ 4} In June 2006, Eikenberry was indicted with one count of having weapons while *Page 3 
under disability. The alleged disability was Eikenberry being under indictment or having been convicted in Case No. 2005-CR-3544. On September 28, 2006, the state added sixteen additional counts of having weapons while under disability.
 {¶ 5} Eikenberry moved to suppress the weapons, arguing that the search warrant was not based on probable cause and did not adequately specify the place to be searched. He also argued that, due to the configuration of the structure, the officers' search exceeded the bounds of the warrant. Eikenberry moved to dismiss the indictments on the ground that the ILC statute precluded a finding that Eikenberry had been convicted of possession of cocaine in Case No. 2005-CR-3544. Eikenberry further argued that he was no longer under indictment in that case, because the case had been resolved by his guilty plea and the court's granting of ILC. The trial court overruled the motions.
 {¶ 6} Eikenberry appeals, raising two assignment of error.
a. "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE."
 {¶ 7} In his first assignment of error, Eikenberry asserts that the trial court erred in overruling his motion to suppress evidence seized pursuant to the February 9, 2006 search warrant. As in the trial court, he argues that the affidavit did not provide probable cause to search the building, that the search warrant did not sufficiently specify the place to be searched, and that the officer's search exceeded the scope of the warrant. We will address each argument in turn.
 {¶ 8} First, Eikenberry claims that the search warrant was invalid, because the affidavit in support of the warrant did not provide probable cause to search Eikenberry's residence and *Page 4 
business at 619 W. Main Street.
 {¶ 9} "In determining the sufficiency of probable cause for a search warrant, the issuing magistrate's task is to simply make a practical, common sense decision whether, in light of the totality of the circumstances including the veracity and basis of knowledge of persons supplying information, a fair probability exists that contraband or evidence of a crime will be found in a particular place. Illinois v.Gates (1983), 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527;State v. George (1989), 45 Ohio St.3d 325.
 {¶ 10} "A reviewing court should not substitute its judgment for that of the issuing magistrate by conducting a de novo determination of whether the affidavit contains sufficient probable cause. Rather, a reviewing court's duty is to simply ensure that the magistrate had a substantial basis for concluding that probable cause existed.George[, supra]. Great deference should be accorded to the magistrate's probable cause determination, and doubtful or marginal cases should be resolved in favor of upholding the warrant. Id" State v. Peagler, Montgomery App. No. 21662, 2007-Ohio-3592, ¶ 16-17.
 {¶ 11} In his brief, Eikenberry engages in a paragraph by paragraph analysis of Adkins's affidavit, challenging the relevance and credibility of the information contained in each. Eikenberry addresses the following pertinent paragraphs of the affidavit:
 {¶ 12} "In or about the month of April 2005 the New Lebanon Police Department took several calls from Kevin Eikenberry reference his seeing men in black following him, hiding on roof tops, hiding in the woods and lowering cameras on ropes from roofs to photograph him in his residence on W. Main Street and at the S. Clayton Apartments. In one such incident Kevin Eikenberry climbed a television antenna and shined a light on people that officer said did not *Page 5 
exist.
 {¶ 13} "On 7/17/2005 I arrested Aaron Milton for possession of cocaine after seeing him leave the Dixie Lounge after hours. Aaron Milton was irate over being arrested and continuously yelled at me that I was afraid to arrest the big drug dealers like Kevin Eikenberry.
 {¶ 14} "On 7/22/2005 a search warrant was executed at 170 S. Clayton Road the Dixie Lounge and Theresa Scott was arrested for possession of cocaine. When I advised SCOTT that evening that she was under arrest for cocaine possession and that the search warrant was in response to her selling crack cocaine there, she denied the allegations, but started telling me that Kevin Eikenberry got her hooked on drugs.
 {¶ 15} "On 7/25/2005 Ptl. Pence while arresting Kevin Eikenberry at 619 W. Main Street on a warrant issued for assault against Pamela Lacey was found to be in possession of two rocks of crack. A crack pipe was also recovered in the rear seat of the cruiser that Kevin Eikenberry had been transported in.
 {¶ 16} "On 8/27/2005 Ptl. Shoulders spoke with Kevin Eikenberry's wife who was in the process of divorcing him. Ptl. Shoulders was advised that Kevin Eikenberry had not been seen in several days and that due to his crack cocaine addiction the wife suspected that he might have ran [sic] into fowl [sic] play while buying crack cocaine in Drexel.
 {¶ 17} "On or about 10/21/2005 Kevin Eikenberry's case from 7/25/2005 was presented to the Montgomery County Grand Jury reference possession of crack.
 {¶ 18} "On or about 10/24/2005 Kevin Eikenberry was indicted by a Montgomery County Grand Jury for one count of Possession of Crack Cocaine.
 {¶ 19} "On 10/28/2005 around 0239 hours, Ptl. Pence arrested Kevin Eikenberry and *Page 6 
Robert Shell in the 100 block of S. Clayton Road after finding crack cocaine (positive field test) under the passenger seat of Kevin Eikenberry's vehicle incident to a consent search. Kevin Eikenberry denied knowledge of the crack cocaine and told Ptl. Pence it belonged to Pamela Lacey who was not in the car with him.
 {¶ 20} "On or about 2/1/2006 I was advised by a Confidential Source who I have dealt with and found to be reliable in the past that Kevin Eikenberry had been witnessed by the source smoking crack on a daily basis and personally knew Kevin Eikenberry to smoke as much as $1,000.00 a day worth of Crack Cocaine. Source advised that Kevin Eikenberry keeps guns in a locked safe inside his residence at 619 W. Main Street. This information would correspond with the fact that in the past several months since Kevin Eikenberry was arrested on 7/25/2006, he has totaled two trucks and a car, and his business and properties are currently in litigation to be repossessed as well as the fact that on about a monthly basis Kevin Eikenberry fails to pay his water bill and all his properties have their water shut off.
 {¶ 21} "On 2/3/2006 a Confidential Source advised me and Det. Brad Williams of the Trotwood Police Department that the source had sold Crack Cocaine worth $200.00 to Kevin Eikenberry within the previous seventy-two hours. The source advised he/she had been selling Crack Cocaine to Kevin Eikenberry for approximately five months off and on and knew that Kevin Eikenberry bought from sources other than his/herself Source further advised that Kevin Eikenberry had on occasion discussed having the source `store' some guns for him. Source advised that he/she would not take the guns from Kevin Eikenberry and was not sure what type of guns he had, but that Kevin Eikenberry had advised he had several. Kevin Eikenberry also shows via LEADS that his Concealed Weapons permit is still active and valid despite his drug *Page 7 
conviction.
 {¶ 22} "Chief Daulton and Ptl. Wilmer witnessed two large gun type safes inside the lower level of 619 W. Main Street within the previous several months on the ground floor."
 {¶ 23} Initially, we agree with Eikenberry that several of the allegations provide little basis for a finding of probable cause that Eikenberry had drugs and weapons in his residence in February 2006. Specifically, Eikenberry's behavior in April 2005, while disturbing, cannot be linked to drug use. Neither can Eikenberry's deteriorating financial condition.
 {¶ 24} The statements by Milton, Scott, and Eikenberry's former wife regarding Eikenberry's use of crack cocaine and his arrest for drug possession are marginally relevant by demonstrating that Eikenberry has a history of abusing crack cocaine. The same holds true for the finding of crack cocaine in Eikenberry's vehicle in October 2005.
 {¶ 25} The significant paragraphs of the affidavit are the statements of Adkins that Eikenberry had been indicted for possession of crack cocaine on October 24, 2005, and the statements of the confidential informants.[1] The allegation that Eikenberry was under indictment for a drug offense provided probable cause to believe that Eikenberry would be prohibited from having firearms during the pendency of that case under R.C. 2923.13(A)(3). The two statements by the confidential informant in February 2006 that Eikenberry was currently using crack cocaine on a daily basis and that Eikenberry possessed guns in his residence indicated that there was a strong probability that Eikenberry had crack cocaine, drug paraphernalia and tools, and guns in his residence in February 2006. The informants' representation that there were guns in *Page 8 
the residence were supported by the allegation that officers had observed two gun-type safes on the first floor.
 {¶ 26} In our view, the averments in the affidavit were sufficient for the magistrate to find probable cause to believe that Eikenberry had drugs and weapons at 619 W. Main Street. Although the magistrate was required to rely significantly on the statements of confidential sources, the affidavit indicated that the source who spoke to Adkins on February 1 had been reliable in the past, and the information in the informant's statements was based on his/her firsthand knowledge. That source informed Adkins that he or she had witnessed Eikenberry smoking crack on a daily basis. The confidential informant's statement on February 3 to Akdins and Williams was also based on personal knowledge, in this case conversations between the source and Eikenberry regarding the storing of Eikenberry's weapons and the informant's sale of crack cocaine to Eikenberry. As stated above, the statements by the confidential informant were corroborated by the averment that Chief Daulton and Patrolman Wilmer had witnessed two large gun safes inside the lower level of 619 W. Main Street within the past several months and the fact that Eikenberry had a concealed weapons permit, which LEADS showed as being active and valid. Moreover, the statements of Milton, Scott, and Eikenberry's former wife regarding Eikenberry's use of crack cocaine, as well as Eikenberry's arrest for drug possession, give support to the allegations of current drug use by Eikenberry. In sum, the search warrant was not invalid for want of probable cause.
 {¶ 27} Second, Eikenberry contends that the search warrant failed to adequately specify the place to be searched. Crim.R. 41(C) provides that an affidavit for a search warrant must describe, with specificity, the place to be searched and the property to be seized. "The *Page 9 
particularity-of-description requirement is satisfied where `the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended.'"Maryland v. Garrison (1987), 480 U.S. 79, 91, 107 S.Ct. 1013,94 L.Ed.2d 72, quoting Steele v. United States (1925), 267 U.S. 498, 503,45 S.Ct. 414, 416, 69 L.Ed. 757.
 {¶ 28} The trial court found that the search warrant sufficiently described the place to be searched, stating:
 {¶ 29} "The warrant described in detail the place to be searched, including the street address of the premises, that the premises was a two story red brick commercial structure with glass store fronts on the bottom floor, and that the location to be searched was the upstairs of the building and ground floor entrance way which has a glass store front entrance located at the center of the plaza facing east. The court further finds that the description in the warrant was sufficient for an officer, with reasonable effort, to ascertain and identify the place to be searched. Further, the place to be searched was contained within the command portion of the warrant."
 {¶ 30} Upon review of the warrant, we agree with the trial court's conclusion that the search warrant adequately specified the place to be searched. Eikenberry's challenge to the search warrant due to a failure to describe the place to be searched with particularity is without merit.
 {¶ 31} Finally, Eikenberry claims that the police went beyond the scope of the warrant while executing the warrant. The trial court rejected this argument, stating that "no evidence was presented with regard to [the warrant's] execution" and the parties had stipulated to the issues and the evidence that the court could consider. Eikenberry has failed to provide a written transcript of the suppression hearing, and we find no evidence in the record to support his *Page 10 
argument that the execution of the warrant was unlawful.
 {¶ 32} The first assignment of error is overruled.
 {¶ 33} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO DISMISS THE INDICTMENT AGAINST HIM."
 {¶ 34} In his second assignment of error, Eikenberry asserts that the trial court erred in failing to dismiss the indictments, because he was not convicted of or under indictment for a drug offense for purposes of R.C. 2923.13(A)(3).
 {¶ 35} R.C. 2923.13(A)(3) provides:
 {¶ 36} "(A) Unless relieved from disability as provided in section2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply: * * *
 {¶ 37} "(3) The person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse * * *."
 {¶ 38} Eikenberry does not deny that he was charged with an offense involving the illegal possession of a drug of abuse in Case No. 2005-CR-3544. Rather, he argues that R.C. 2951.041, the statute governing intervention in lieu of conviction, precludes a finding that he was convicted of possession of cocaine in that case. Eikenberry further argues that the indictment was no longer pending due to his entry of a guilty plea and the court's granting of ILC.
 {¶ 39} Under R.C. 2951.041(A), the trial court may grant a defendant's request for intervention instead of conviction if the offender "is charged with a criminal offense and the *Page 11 
court has reason to believe that drug or alcohol usage by the offender was a factor leading to the offender's criminal behavior." If the trial court grants a defendant's request for ILC, the court must accept the defendant's plea of guilty and his waiver of certain rights, R.C.2951.041(C), and the court must establish an intervention plan akin to community control. R.C. 2951.041(D). The court may stay all criminal proceedings and order the offender to comply with all terms and conditions imposed by the court pursuant R.C. 2951.041(D).
 {¶ 40} If the defendant successfully completes the intervention plan, the court will dismiss the proceedings against the defendant. R.C.2951.041(E). "Successful completion of the intervention plan and period of abstinence [R.C. 2951.041] shall be without adjudication of guilt and is not a criminal conviction for purposes of any disqualification or disability imposed by law and upon conviction of a crime, and the court may order the sealing of records related to the offense in question in the manner provided in sections 2953.31 to 2953.36 of the Revised Code." Id. On the other hand, if the defendant fails to complete the intervention successfully, the court will enter a finding of guilty and impose an appropriate sentence. R.C. 2951.041(F).
 {¶ 41} Here, the trial court correctly determined that Eikenberry remained under indictment at the time that he was found to have firearms. Although Eikenberry tendered a plea of guilty on February 2, 2006 in Case No. 2005-CR-3544, the trial court in that case withheld an adjudication of guilt and stayed the criminal proceedings. As cogently stated by the trial court:
 {¶ 42} "The granting of a Motion for Intervention in Lieu of Conviction necessarily implies that a guilty plea has been entered, but that the plea is still pending before the trial court. Therefore, since the matter has not been disposed of by dismissal or sentencing, the indictment remains pending before the court." *Page 12 
 {¶ 43} On February 10, 2006, the trial court had neither dismissed the indictment against Eikenberry based on his successful completion of the intervention plan nor had Eikenberry been sentenced for failure to complete the plan successfully. Because the indictment against Eikenberry in Case No. 2005-CR-3544 remained pending, Eikenberry was "under indictment" for purposes of R.C. 2923.13(A)(3).
 {¶ 44} The second assignment of error is overruled.
 {¶ 45} The judgment of the trial court will be affirmed.
BROGAN, J. and GRADY, J., concur.
[1] It is unclear from the affidavit whether the February 1 confidential source was the same informant as the February 3 confidential source. *Page 1