[Cite as *State v. Boyd*, 2020-Ohio-125.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28490 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-2850 |
| | : | |
| ANTWYN BOYD | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 17th day of January, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by LISA M. LIGHT, Atty. Reg. No. 0097348, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

ROBERT ALAN BRENNER, Atty. Reg. No. 0067714, P.O. Box 340214, Beavercreek, Ohio 45434
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

**{¶ 1}** Defendant-appellant Antwyn Boyd appeals his conviction for one count of possession of cocaine (less than five grams), in violation of R.C. 2925.11(A), a felony of the fifth degree. Boyd argues in his sole assignment of error that the trial court erred when it overruled his motion to suppress the evidence seized during a vehicle search. Boyd filed a timely notice of appeal with this Court on August 5, 2019.

**{¶ 2}** The incident which formed the basis for Boyd's conviction occurred on the night of July 18, 2018, when Detective Jeremy Reeb and his partner, Sergeant Riegel, were conducting surveillance on foot in the parking lot of Gina's Party Store (hereinafter "Gina's"), located at 2227 Germantown Street in Dayton, Ohio. At the hearing on the motion to suppress, Detective Reeb testified that Gina's is located in a high crime area, specifically known for the sale of illegal narcotics. Detective Reeb testified that on the night in question, he observed an unusually large number of people loitering in Gina's parking lot and walking between parked vehicles. On that basis, Detective Reeb and Sergeant Riegel decided to patrol the parking lot.

**{¶ 3}** While patrolling an area on the northwest corner of the business parking lot, Detective Reeb observed two individuals standing behind a parked Chevy Impala. As the officers approached the two individuals, one of the men walked away while the other man stayed and briefly spoke with the officers. At that point, Detective Reeb observed an individual, later identified as Boyd, exit Gina's and walk toward the area where the Chevy Impala was parked. Detective Reeb testified that this caught his attention because there was nothing in that area of the parking lot except the officers, the remaining unidentified individual, and the Impala. Detective Reeb also testified that Boyd was wearing a distinctive reflective vest that further caught his attention. Detective Reeb

testified that upon observing the officers, Boyd walked right past them and kept on walking through the parking lot. After speaking with the first individual, Detective Reeb determined that he was not doing anything illegal and thus allowed him to leave.

{¶ 4} Because they were on foot and did not have access to their computer system, Detective Reeb contacted another officer on patrol in the surrounding area and requested that the officer run a license plate check on the Impala. Shortly thereafter, Detective Reeb received information that, while Boyd was not the registered owner of the vehicle, he was known to regularly drive the vehicle and to drive it without a valid driver's license. Detective Reeb and Sergeant Riegel also received information that Boyd had an outstanding warrant for his arrest, and they were within the pickup radius. Detective Reeb asked the patrol officer if he could produce a photograph of Boyd in order to identify the individual with the warrant and the possible driver of the Impala. The assisting patrol officer arrived at Gina's and provided Detective Reeb with a photograph of Boyd, and Sergeant Riegel identified Boyd as the individual wearing the reflective vest who had just walked away from them.

{¶ 5} Detective Reeb testified that, "[w]ithin a minute or two later," they observed Boyd, still wearing the reflective vest, walk back toward Gina's and go inside. Detective Reeb followed Boyd into the store and asked him to come outside. Upon exiting the store, Detective Reeb handcuffed Boyd and read him his *Miranda* rights. At that point, Boyd indicated that he was willing to speak with the officers. Detective Reeb testified that he asked Boyd what he thought that he being stopped for, and Boyd replied, "probably driving without a license." Additionally, although he was not the registered owner of the Impala, Boyd informed Detective Reeb that the vehicle was his. Upon being

searched, Boyd was found to have a set of car keys in his pocket. Detective Reeb testified that he pushed the "unlock" button on the key fob which unlocked the Impala. Boyd was thereafter arrested and placed in the back of a police cruiser.

{¶ 6} Because Boyd was being arrested and to keep the vehicle from being vandalized, Detective Reeb decided to have the Impala towed. Before the Impala could be towed, however, Detective Reeb walked over to the driver's window of the vehicle and observed a baggie of what appeared to be cocaine sitting in plain view in a coin holder attached to the door inside the vehicle. The suspected cocaine was immediately recovered by the police, and the subsequent inventory search of the vehicle yielded only credit/debit cards belonging to Boyd. Detective Reeb testified that when asked about the contraband found in the Impala, Boyd admitted that the substance was in fact cocaine and was his. When Detective Reeb asked Boyd where he bought the cocaine, Boyd stated that he wanted to speak with a lawyer and did not wish to answer any more questions. Detective Reeb testified that all questioning ceased at that point, and Boyd was taken to jail.

{¶ 7} On August 29, 2018, Boyd was indicted for one count of possession of cocaine. At his arraignment on October 4, 2018, Boyd stood mute, and the trial court entered a plea of not guilty on his behalf. On March 13, 2019, Boyd filed a motion to suppress any physical evidence seized during the search of Boyd and the Impala, as well as any statements made by Boyd after being detained by Detective Reeb.

{¶ 8} A hearing was held on Boyd's motion to suppress on May 2, 2019. On May, 9, 2019, the State filed a post-hearing response to case law submitted by Boyd at the suppression hearing. Boyd filed a reply to the State responsive brief on May 15, 2019.

On June 4, 2019, the trial court announced in open court that it was overruling Boyd's motion to suppress. Specifically, the trial court found that Detective Reeb had "knowledge of a direct connection between [Boyd] and the vehicle including the keys and the field identification card" indicating that Boyd was known to drive the Impala regularly and without a driver's license. The trial court also found that the identification of Boyd was made prior to his arrest on the outstanding warrant, and the cocaine was found in plain view in the Impala "in the parking lot of a business establishment." Furthermore, the trial court found that any admissions made by Boyd regarding the cocaine were made after he was advised of his *Miranda* rights, and the Impala was parked in an area where it was subject to theft and vandalism. Therefore, the trial court found that the tow of the Impala was conducted properly. On June 5, 2019, the trial court filed an entry indicating that Boyd's motion to suppress was overruled.

{¶ 9} On July 31, 2019, Boyd pled no contest to possession of cocaine, and the trial court sentenced him to community control sanctions. The trial court suspended execution of Boyd's sentence pending the outcome of the instant appeal.

{¶ 10} It is from this judgment that Boyd now appeals.

{¶ 11} Boyd's sole assignment of error is as follows:

THE TRIAL COURT ERRED BY OVERRULING DEFENDANT'S MOTION

TO SUPPRESS EVIDENCE.

{¶ 12} In his assignment, Boyd contends that the trial court erred when it overruled his motion to suppress because "the police were not justified in towing the Chevy Impala." Specifically, Boyd argues that the police violated his Fourth Amendment rights by seizing the cocaine and searching the Impala for the following reasons: 1) Boyd was not arrested

for anything in connection with the vehicle; and 2) the police were unable to place Boyd in the vehicle and could not show that he was the most recent occupant of the vehicle.

{¶ 13} "In ruling on a motion to suppress, the trial court 'assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses.' " *State v. Prater*, 2012-Ohio-5105, 984 N.E.2d 36, ¶ 7 (2d Dist.), quoting *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994). "As a result, when we review suppression decisions, 'we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard.' " *Id.*, quoting *Retherford*.

{¶ 14} Initially, we note that the only witness who testified at the hearing on Boyd's motion to suppress was Detective Reeb. The trial court found the detective's testimony to be credible and adopted it as the court's factual findings.

{¶ 15} The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" Searches and seizures conducted without a warrant are per se unreasonable unless they come within one of the " 'few specifically established and well delineated exceptions.' " *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), quoting *Thompson v. Louisiana*, 469 U.S. 17, 20, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984). Evidence is inadmissible if it stems from an unconstitutional search or seizure. *Wong Sun v. United States*, 371 U.S. 471, 484-85, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

{¶ 16} The plain view doctrine is an exception to the search warrant requirement. *State v. Hunter*, 2d Dist. Montgomery No. 24350, 2011-Ohio-6321, ¶ 31, citing *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). "Under the plain-view exception, 'police may seize an article when its incriminating nature is immediately apparent to an officer who comes in contact with the item through lawful activity.' " *State v. Thompson*, 2d Dist. Montgomery No. 25658, 2013-Ohio-4825, ¶ 13, quoting *State v. Pounds*, 2d Dist. Montgomery No. 21257, 2006-Ohio-3040, ¶ 19. "The police officer need not be absolutely certain that the item seen in plain view is contraband or evidence of a crime. It is sufficient if probable cause exists to associate the item with criminal activity." *Pounds* at ¶ 19, citing *State v. Stiffler*, 2d Dist. Montgomery No. 21008, 2006-Ohio-46, ¶ 15.

{¶ 17} Once an officer sees contraband in plain view inside a vehicle, he or she then has probable cause to believe the vehicle contains other items of contraband and may conduct a warrantless search of the vehicle pursuant to the automobile exception to the search warrant requirement. *Thompson* at ¶ 13, citing *Pounds* at ¶ 21. "Under the automobile exception, police may warrantlessly search a vehicle that they have probable cause to believe contains contraband." *Id.*, citing *State v. Moore*, 90 Ohio St.3d 47, 51, 734 N.E.2d 804 (2000). "The scope of the search extends to anywhere in the vehicle that contraband might be hidden." *Id.*, citing *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). This includes a closed container if there is probable cause to believe it contains evidence related to the crime under investigation. *State v. Roberts*, 2d Dist. Montgomery No. 21221, 2006-Ohio-3042, ¶ 18.

{¶ 18} A vehicle's mobility is the traditional exigency for this exception to the

warrant requirement. *State v. Mills*, 62 Ohio St.3d 357, 367, 582 N.E.2d 972 (1992); *California v. Carney*, 471 U.S. 386, 393, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment * * * permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996). The automobile exception does not have "separate exigency requirement" beyond the vehicle's mobility. *Maryland v. Dyson*, 527 U.S. 465, 467, 119 S.Ct. 2013, 144 L.E.2d 442 (1999). Moreover, "[t]he immobilization of the vehicle or low probability of its being moved or evidence being destroyed does not remove the officers' justification to conduct a search pursuant to the automobile exception." *State v. Russell*, 2d Dist. Montgomery No. 19901, 2004-Ohio-1700, ¶ 34.

{¶ 19} In the instant case, the record establishes that Detective Reeb was located in the parking lot of a business establishment when he observed what he suspected to be cocaine in plain view inside the Impala in a coin holder on the driver's side door. Although he had already decided to perform an inventory search and then tow the vehicle, Detective Reeb saw the baggie of cocaine inside the vehicle *before* he began the inventory search of the vehicle. *See State v. Evans*, 2d Dist. Montgomery No. 25866, 2014-Ohio-4703, ¶ 19 (after observing the pipe in plain view and recovering marijuana from the defendant's front pocket, the officer had sufficient probable cause to believe that the vehicle may contain additional contraband, thus justifying a search of the vehicle under the automobile exception to the warrant requirement); *see also Pounds*, 2d Dist. Montgomery No. 21257, 2006-Ohio-3040 (a police officer's observation of marijuana on the passenger floor gave him probable cause to believe that the defendant's vehicle

contained other contraband; thus, the police officer was entitled to search the vehicle pursuant to the automobile exception to the warrant requirement). We note that while the trial court did not complete a full plain view analysis, it did specifically find that the "cocaine was in plain view." Furthermore, the trial court found Detective Reeb's testimony to be credible and his testimony that the baggie of cocaine was plain view uncontroverted.

{¶ 20} Upon review, we conclude that the record establishes that Detective Reeb was in a place (a business parking lot) where he was entitled to be, and, while so positioned, saw and instantly recognized probable cocaine inside the Impala. Having observed the probable cocaine in plain view inside Boyd's vehicle, the officers were entitled to seize the evidence as probable contraband. *See Pounds* at ¶ 21. Thus, the seizure of the cocaine did not violate the Fourth Amendment.

{¶ 21} On appeal, Boyd argues that the evidence adduced by the State was insufficient to establish that he was a recent occupant of the Impala. Boyd also contends that the outstanding warrant for his arrest was not connected to anything found inside the vehicle. The fact that neither Detective Reeb nor Sergeant Riegel observed Boyd driving the vehicle on the night in question is irrelevant. As previously stated, the officers were able to identify Boyd prior to arresting him pursuant to the outstanding arrest warrant. Furthermore, the field identification card indicated that Boyd was known to drive the vehicle. Boyd also admitted to the officers that the vehicle was his, and the keys to vehicle were found in his pocket. Significantly, after being *Mirandized*, Boyd admitted that the cocaine located in plain view inside the Impala was his, and when he was asked what he thought that he being stopped for, Boyd replied, "probably driving without a

license."

{¶ 22} In support of his argument that the decision to tow his vehicle was improper, Boyd relies on *State v. Clay*, 8th Dist. Cuyahoga No. 91942, 2009-Ohio-2725. In *Clay*, the court held that police may not seize a defendant's car and conduct an inventory search following a defendant's arrest where it was legally parked and no public concern existed which required the removal of the car from its legally parked place. In *Clay*, the defendant's vehicle was legally parked in the driveway of a private residence where it could be left. Moreover, the officers in *Clay* had no indication that the defendant was ever an occupant of the vehicle, and the gun that was subsequently suppressed was found during the inventory search prior to the tow.

{¶ 23} We find that *Clay* is distinguishable from the facts in the instant case. As previously stated, there were several indicators that Boyd was the most recent occupant of the vehicle. Unlike the vehicle in *Clay* that was parked in the driveway of a private residence, Boyd's vehicle was parked in a private business parking lot open to the public in a high crime area. Accordingly, the trial court could have reasonably concluded that the tow was necessary in order to avoid theft or vandalism, necessitating that the Impala be secured in a tow yard for safekeeping. No evidence was adduced that the store was open twenty-four hours a day/seven days a week. Nevertheless, even if he had not ordered that the Impala to be towed, Detective Reeb had already seen the baggie of cocaine in plain view, thus providing him with probable cause to search the vehicle pursuant to the automobile exception to the warrant requirement. In light of the foregoing, we conclude that Boyd's Fourth Amendment rights were not violated by Detective Reeb's search of his vehicle and that the trial court properly overruled his

motion to suppress evidence of the seized cocaine.

{¶ 24} Boyd's assignment of error is overruled.

{¶ 25} Boyd's assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J., and WELBAUM, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Lisa M. Light
Robert Alan Brenner
Hon. Gregory F. Singer